13828

CHAPMAN-STORM LUMBER CORP. v. MINNESOTA-SOUTH
CAROLINA LAND & TIMBER CO. *ET AL.*

(175 S. E., 852)

*Messrs. L. D. Lide, Legare Walker, Adam H. Moss* and *M. E. Zeigler,* for appellants,

*Messrs. W. C. Wolfe* and *Lide & Felder,* for respondent,

April 11, 1934.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by the plaintiff, Chapman-Storm Lumber Corporation, against the defendants, Minnestota-South Carolina Land & Timber Company *et al.,* commenced in the Court of Common Pleas for Orangeburg County, November, 1932, grew out of a written contract, dated January 5, 1927, entered into by and between Minnesota-South Carolina Land & Timber Company, a corporation, party of the first part (called the seller), and F. F. Chapman and A. F. Storm, parties of the second part (called the buyers), regarding certain timber, timber rights, etc., on lands situated in the counties of Berkeley, Dorchester and Orangeburg, said State of South Carolina; the said contract being duly recorded in the said several counties. Pursuant to a provision in said contract, a corporation known as Chapman-Storm Lumber Corporation was duly organized and all of the rights of the said F. F. Chapman and A. F. Storm under the said contract were duly assigned unto the said corporation, Chapman-Storm Lumber Corporation, plaintiff herein. The plaintiff alleges that the defendant Minnesota-South Carolina Land & Timber Company duly accepted the formation of the plaintiff corporation and the assignment of their rights and interests in the aforesaid contract by the said F. F. Chapman and A. F. Storm to such corporation, plaintiff herein, as due compliance with the terms of the said contract and the said contract then subsisted between the plaintiff and the defendant Minnesota-South Carolina Land & Timber Company, each of whom undertook the performance thereof, which contract the plaintiff alleges it has performed on its part. The plaintiff further alleges that, by reason of the said mentioned transactions, it became the owner of valuable property rights and interests in the lands, timber lands and timber formerly owned by the Minnesota-South Carolina Land & Timber Company. In this connection, for the purpose of a clear understanding of the grounds upon which the plaintiff bases the action involved, we quote the following from the complaint:

"8. That in order to carry out the provisions of the said contract, the plaintiff acquired property and erected, constructed and established a large modern and extensive saw mill plant at Four Holes, in the County of Orangeburg, in the State aforesaid, erected numerous and expensive buildings, installed valuable and adequate machinery, constructed logging roads and railroads with all usual, useful and necessary machinery over and upon lands of the defendant, Minnesota-South Carolina Land and Timber Company, and lands upon which they owned timber rights, together with appurtenances for a modern saw mill or lumber manufacturing plant at a cost of about Two Hundred and Fifty Thousand Dollars.

"9. That in compliance with the provisions of the aforesaid contract, the plaintiff executed and delivered to the defendant, Minnesota-South Carolina Land and Timber Company, fifteen per cent of the plaintiff's capital stock, amounting to the sum of Thirty-seven Thousand Five Hundred Dollars, and certain mortgage or mortgages which have been duly recorded, and copies of which are attached hereto as Exhibits 'B' and 'C', respectively.

"10. That the plaintiff commenced opeartions and did cut, as provided in the contract, a part of the timber referred to in said contract, and acquired thereunder, and manufactured the same into lumber, and its operations were on a large and extensive scale.

"11. That about the year, 1930, and while plaintiff's mill and plant were in full operation in the performance of said contract, an unexpected and unparalleled business and economic depression developed in this country, causing a financial crisis and particularly affecting the timber and lumber industries in respect to prices and consumption, so that very little manufactured lumber could be sold and marketed; and that thereafter the plaintiff closed down its timber operations and its saw mill and lumber manufactur-

ing plant for such reasons, as it had a right to do under the said contract.

"12. That thereupon and in utter disregard of the rights, ownership, and property interests of the plaintiff, the defendants, acting in concert and knowingly, wilfully, wantonly and unlawfully, and without the knowledge or consent of plaintiff, entered upon the said lands and began to cut, haul, remove, saw and sell the said timber, and lumber manufactured therefrom, and continued and are continuing the same to do over the protests of the plaintiff, so that its said rights, privileges, property and interests have been destroyed and its large investments in its lands, saw mill, lumber and manufacturing plant, tramways, railways, machinery, buildings and other investments have become worthless and without value for the purposes for which they were provided and intended; and, also, that the plaintiff has been thus deprived of making its reasonable profits.

"13. That such wilful, wanton and unlawful acts so done and committed by the defendants were done and committed by them jointly and concurrently, as well as severally, and that by reason of all of such wilful, wanton and unlawful acts, so done and committed by the defendants, acting jointly and concurrently, as well as severally, as aforesaid, the plaintiff has suffered and sustained damages in the sum of Five Hundred Thousand Dollars.

"14. That the said wilful, wanton and unlawful acts of the defendants are not only numerous but repetitious and are continuing, causing the plaintiff great and irreparable loss, injury and damage."

The prayer of the complaint is in line with the above allegations.

To the complaint the defendants filed a demurrer, on the ground that the same does not state facts sufficient to constitute a cause of action, assigning the following reasons therefor:

"(c) In that the complaint is based on tort, to wit: trespass and conversion relating to certain lands, and certain timber and lumber alleged to have been manufactured therefrom, while the allegations, including the written contract attached to the complaint as a part thereof, show that the title to the said lands and timber, and to the lumber alleged to have been manufactured therefrom, was, at the times of the alleged trespass and conversion, in the defendant, Minnesota-Carolina Land and Timber Company, and not in the plaintiff;

"(b) In that the complaint is based on tort, and the allegations thereof, including the written contract attached thereto as a part thereof, show that the pretended torts alleged, arise out of the breach of contractual duties only."

The demurrer was heard by his Honor, Judge M. M. Mann, who after hearing argument and upon due consideration overruled the same, in a formal order. From the said order the defendants have appealed to this Court, alleging error in his Honor's ruling.

The contract involved has a considerable bearing on the questions raised by the appeal, and reference will be made thereto, but, on account of the length of the contract, we shall not quote the same in full.

As indicated in the grounds of the demurrer, it is the contention of the appellants that there was no intention of the parties to the contract that the Minnesota-South Carolina Land & Timber Company should part with the title to the land and timber thereon involved, but that the title to the land and timber involved should remain in the defendant Minnesota-South Carolina Land & Timber Company; that therefore the attempted action on the part of the plaintiff cannot be maintained. They contend that the written contract, attached to the complaint and made a part thereof, shows that the title to the said lands and timber, and the lumber alleged to have been manufactured therefrom, was, at the times of the alleged trespass and conversion, in the

defendant Minnesota-South Carolina Land & Timber Company, and not in the plaintiff. They further contend that the action cannot be maintained for the reason that the plaintiff, further, alleged that it executed and delivered unto the defendant, Minnesota-South Carolina Land and Timber Company, certain real estate mortgages, on property of the plaintiff, the said plant and certain other property, including a tract of land; that the purpose of the execution and delivery of said mortgages was to comply with the provisions of said contract, and one inference to be drawn from the record in the case is that the mortgages were given to secure the payments of all amounts required under and by virtue of the said contract for the sale of the timber involved, or manufactured product therefrom, as set forth in the said contract involved in the case before us, and, also to secure the full and faithful performance of said contract in all respects. The contract provided and required a certain portion of said timber to be cut from month to month, and manufactured within a certain period, a certain sum to be paid at stated times, as the timber was manufactured into lumber and sold, under certain named conditions. Further, a time was stipulated within which the timber should be cut from the lands, with the right under certain conditions to have the time for removing the timber extended. In this connection we also call attention to the fact that the said contract provided that the Minnesota-South Carolina Land and Timber Company, the seller, should have, and it reserved to itself, "a first and indefeasible purchase money lien upon all of the logs, lumber and other products of every kind which shall be cut and manufactured by the buyers from the aforesaid timber, to secure the payment of the stumpage prices thereof as hereinbefore set forth." The contract further provided that "in order to secure all payments required under this contract in every respect, the sellers shall have, and the same is hereby granted to it by the buyers, a first indefeasible lien upon the mill site of the buyers. * * *"

The contract involved also provided that the buyers should during the life of the contract, "as a part of the purchase price for the aforesaid timber," promptly and punctually and regularly pay one-half of the taxes, including assessments and all government charges, if any, upon the aforesaid lands and standing timber.

As alleged in the complaint, the contract contains a provision, in effect, that, in the event of extraordinary financial depression, the buyers should have the right to suspend the operation of the cutting and manufacture of the said timber during such depression; that, in view of such provision and in view of the fact that such depression existed during the time involved, the plaintiff did, according to the allegations of complaint, suspend operations; and, instead of the Minnesota-South Carolina Land & Timber Company recognizing such right on the part of the plaintiff, it and its codefendants committed the acts complained of, as set forth in the complaint.

While we have not in this opinion made specific reference to every provision in the contract involved, we have duly considered the contract as a whole, and, bearing in mind the familiar rule that, for the purpose of the demurrer, the contract must be construed in the most favorable light for the plaintiff, it is our opinion that the plaintiff acquired under said instrument substantial property rights; that under it the plaintiff acquired the right to enter upon the lands involved for the purpose of cutting and removing therefrom the described timber for the purpose of manufacturing the same into lumber for sale, in accordance with the terms and conditions set forth in the said contract. So long as the plaintiff complied with the manner and conditions in the contract for cutting and removing the said timber, it certainly had the right to go upon the said lands for cutting and removing said timber. The fact that payment, or part payment, of the purchase price was postponed until the manufacture of the said timber into lumber could not

affect the property rights acquired under the contract by the plaintiff.

As we view the case, the issues raised under the complaint cannot be determined on demurrer.

It is therefore the judgment of this Court that the order of his Honor, Judge M. M. Mann, appealed from, be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.